IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**DEBORAH YVONNE VANCE,**

      **Plaintiff,**

v.                                  Civil Action No. 2:04-cv-00807

**JO ANNE B. BARNHART,**
**Commissioner of Social**
**Security,**

      **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

    This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case is presently pending before the court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

    Plaintiff, Deborah Yvonne Vance (hereinafter referred to as "Claimant"), filed an application for DIB on February 5, 2003, alleging disability as of October 17, 2002, due to arthritis in her back, neck and arm; bursitis in her knees and shoulder; depression,

anxiety and irritable bowel syndrome; nausea and vomiting; pain, dizziness, allergies and asthma. (Tr. at 63-5, 109.) The claim was denied initially and upon reconsideration. (Tr. at 46, 53.) On October 8, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 56.) The hearing was held on February 19, 2004 before the Honorable Arthur Conover. (Tr. at 560-603.) By decision dated March 17, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-26.) The ALJ's decision became the final decision of the Commissioner on July 16, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On August 2, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The

first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

3

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15; Finding No. 2, tr. at 24.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of back pain, neck pain, bone spur of the left knee, major depressive disorder and generalized anxiety disorder. (Tr. at 19; Finding No. 3, tr. at 24.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19; Finding No. 4, tr. at 24.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 23; Finding Nos. 6, 11, 12, tr. at 25.) As a result, Claimant cannot return to her past relevant work. (Tr. at 23; Finding No. 7, tr. at 25.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as a non-postal mail clerk, general clerk, and security worker, which exist in significant numbers in the national economy. (Tr. at 24; Finding No. 12, tr. at 25.) On this basis, benefits were denied. (Tr. at 24; Finding No. 13, tr. at 25.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was

defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 45 years old at the time of the administrative hearing. (Tr. at 564.) She has a high school equivalent education. (Tr. at 564.) In the past, she worked as an assistant manager and clerk in a retail store, performed personal care for the elderly, and was a homemaker. (Tr. at 565-72.)

The Medical Record

The court has reviewed all evidence of record, including the

medical evidence, and will discuss it further below as necessary.

1.  *Medical Evidence*

Claimant injured her back and neck at work on October 17, 2002 while lifting a bucket of water. (Tr. at 364.) She also suffered right knee pain from this incident. After examination, an emergency room physician diagnosed acute myofascial strain of Claimant's cervical and lumbar spine. (Tr. at 363.) Claimant was released with medications and instructions to use a heating pad and to follow up with a physician. (Tr. at 362.)

Claimant began a course of aquatic physical therapy on November 5, 2002. She continued in therapy two to three times per week through July, 2003. (Tr. at 493-517.) Therapists' notes do not include any complaints relating to Claimant's breathing or her weight.

On November 13, 2002, Claimant was evaluated by Katherine A. Hoover, M.D. of the Comprehensive Care Center in Williamson for continuing complaints of back and neck pain. (Tr. at 404.) She was noted to be overweight (66 inches tall, 240 pounds). Dr. Hoover noted that Claimant had tenderness and spasm in her neck and that she had occasional wheezing in her lungs. Dr. Hoover diagnosed lumbago, lumbar and cervical strain, anxiety, and refractory pain. She advised Claimant to stop smoking and to begin physical therapy exercises three times a week. She also prescribed medications. (Tr. at 404.)

Claimant returned to Dr. Hoover on November 26 and December 9, 2002 with the same complaints. An MRI conducted on December 5, 2002 of Claimant's lumbosacral spine revealed a mild degree of central and posterior disc protrusion at L3-4 and early dehydrated changes at L4-5. (Tr. at 372.)

Claimant requested that Dr. Hoover write a report keeping her from work due to lumbar and right hip pain, and her complaints that her right toe went numb and her back gave out, causing her to fall. (Tr. at 401.) Dr. Hoover opined that Claimant could return to work on February 15, 2003. (Tr. at 401.)

On December 30, 2002, Claimant reported neck pain radiating into her hand, for which Dr. Hoover prescribed medications and ordered a cervical MRI. (Tr. at 400.) The MRI conducted on January 6, 2003 showed small bulging disc osteophytic complexes between C5-6 and C6-7, but no evidence of any cord compression. The cord showed normal signal intensity, and the appearance favored cervical spondylosis. (Tr. at 371.)

On January 14, 2003, Claimant reported that her neck and back bothered her a lot, but that her medications were helping. She reported that her back gave out, causing a sprain in her left knee. She continued to attend physical therapy three times a week as prescribed. (Tr. at 399.) She reported at a later visit that physical therapy was not helping much, but her TENS unit was effective. (Tr. at 398.) Due to Claimant's continued complaints

7

and tenderness in her knee, Dr. Hoover ordered an MRI of her knee. (Tr. at 398.) The MRI, conducted on March 6, 2003, was normal. (Tr. at 370.)

William F. Ryckman, M.D., Dr. Hoover's medical partner, authored a note to West Virginia Compensation on February 28, 2003 summarizing Claimant's complaints and course of treatment in their offices. (Tr. at 395.) He requested that Compensation permit Claimant to continue office visits and medication, and that they authorize a neurosurgical consultation. Dr. Ryckman estimated that Claimant could return to work on May 25, 2003. (Tr. at 395.)

Dr. Hoover examined Claimant on March 25, 2003 and noted no new complaints. She prescribed a knee brace and a lumbar support. (Tr. at 393.)

Dr. Ryckman wrote a Progress Notes Narrative of Claimant's care on April 8, 2003. (Tr. at 389-91.) He recorded Claimant's unresolved complaints as of that date, which included difficulties with walking, pain upon walking up and down steps, and an inability to work. Claimant also reported difficulty with moving from a sitting to standing position and difficulty lifting. (Tr. at 390.) Claimant's lumbar spine showed decreased lordosis and she had pain at spinous processes of L1-L5. She exhibited tenderness and limited range of motion in her lumbar spine, and tenderness in her cervical spine. Dr. Ryckman diagnosed lumbar and cervical sprain and knee sprain. (Tr. at 390.) He advised Claimant to increase

her exercise and prescribed therapy twice a week to decrease pain and increase range of motion. He also prescribed pain medications and muscle relaxants. (Tr. at 391.)

Claimant continued to treat with Drs. Hoover and Ryckman through July 2, 2003, without significant change in her complaints. (Tr. at 384-90.)

State agency medical source Marcel Lambrechts, M.D. completed a Physical Residual Functional Capacity Assessment form on May 9, 2003. (Tr. at 375-82.) Dr. Lambrechts specifically noted Claimant's weight and BMI as of that time of 39. (Tr. at 380.) Nonetheless, he opined that she could perform a limited range of light work. (Tr. at 375-82.)

At the request of Workers' Compensation, Claimant was evaluated by Anbu Nadar, M.D. on June 6, 2003. (Tr. at 518-9.) He diagnosed cervical and lumbosacral strain with radiculopathy. He opined that Claimant was in need of further physical therapy and pain clinic management. (Tr. at 519.)

Upon referral from Dr. Hoover, Claimant was examined by David L. Weinsweig, M.D. on August 11, 2003. (Tr. at 406-7.) Dr. Weinsweig's report reflects that physical therapy had been discontinued due to Claimant's lack of progress. He diagnosed multiple areas of pain and recommended treatment at a multidisciplinary pain clinic, an EMG/nerve conduction study of Claimant's right upper extremity, a bone scan, and an evaluation by

an orthopaedic surgeon. (Tr. at 407.)

As the Commissioner observes, none of these consulting physicians noted breathing problems, asthma, or obesity-related limitations.

State agency medical source Uma Reddy, M.D. completed a Physical Residual Functional Capacity Assessment form on August 29, 2003. (Tr. at 409-16.) Like Dr. Lambrechts, Dr. Reddy opined that Claimant was capable of engaging in light work.

Claimant visited Lenore Medical Clinic in May 2003 with shortness of breath and chest tightness upon activity. She had no wheezing upon examination, and the diagnoses were bronchitis and allergies. (Tr. at 419.) On September 4, 2003, physicians detected wheezing and rhonci in her lungs, and diagnosed "asthmatic bronchitis". (Tr. at 418.)

Claimant visited Logan General Hospital on December 30, 2003 and January 23, 2004. (Tr. at 554-5.) She gave a history of asthma and complained of congestive cough and shortness of breath. (Tr. at 555.) On the second visit, E. Kowatli, M.D. diagnosed asthma, hypertension, and atypical chest pain. (Tr. at 554.) Claimant's lungs were clear upon this exam.

   *2. Psychological Evidence*

Claimant visited Logan-Mingo Mental Health on October 10, 2003 and was evaluated by a therapist. (Tr. at 547-9.) She did not have any suicidal or homicidal thoughts or psychotic symptoms.

(Tr. at 549.) She reported taking only Xanax as prescribed by Dr. Ryckman. Curiously, the therapist diagnosed major depression, recurrent, moderate, and a generalized anxiety disorder. (Tr. at 549.) She ranked Claimant's GAF at 55. (Tr. at 549.)

L. Thambidurai, M.D. signed the therapist's report and evaluated Claimant in follow-up on November 13, 2003. (Tr. at 549, 545-5.) She noted that Claimant was not in any acute distress, physically or emotionally. She stated that Claimant had no psychotic features and that her judgment was unimpaired. Claimant appeared depressed and anxious. (Tr. at 546.) Dr. Thambidurai prescribed medications and recommended counseling.

Following the hearing in this case, Claimant submitted a Medical Assessment of (Mental) Ability to do Work-Related Activities form completed by Dr. Thambidurai on February 19, 2004. (Tr. at 556-9.) Dr. Thambidurai indicated therein that Claimant had only fair abilities to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, and maintain attention/concentration. (Tr. at 557.) She indicated that Claimant had a poor ability to deal with work stresses, and to understand, remember, and carry out complex or detailed job instructions. She had a fair ability to understand, remember and carry out simple job instructions. (Tr. at 557.)

The Assessment further indicates that Claimant had a poor

11

ability to behave in an emotionally stable manner, to relate predictably in social situations, and to demonstrate reliability. Dr. Thambidurai did not supply any medical or clinical findings to support her opinions. (Tr. at 556-8.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the Appeals Council failed to give due consideration to evidence received after the hearing, that being the Medical Assessment of (Mental) Ability to do Work-Related Activities form; (2) the ALJ failed to properly consider Claimant's impairments of asthma and obesity. (Pl.'s Br. at 7-10.) The Commissioner responds that the Medical Assessment provided no basis for changing the ALJ's decision; hence, the Appeals Council's action was proper. She also responds that Claimant's complaints of asthma and obesity did not result in functional limitation beyond what the ALJ determined. (Def.'s Br. at 8-11.)

    1.   *Post-Hearing Evidence*

Following her hearing, Claimant submitted to the Appeals Council a Medical Assessment of (Mental) Ability to do Work-Related Activities completed by Dr. Thambidurai and dated February 19, 2004. (Tr. at 556-9.) The Appeals Council considered this additional evidence, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 6-8.) Claimant asserts that

the information contained in the Assessment should have changed the outcome of her case. Specifically, she argues that Dr. Thambidurai is a treating physician, and that the doctor's opinion that Claimant had a poor ability to behave in an emotionally stable manner and a poor ability to demonstrate reliability should have been afforded controlling weight. Claimant asserts that these functional limitations would have further reduced her employment potential. (Pl.'s Br. at 8-9.)

The Commissioner responds that Dr. Thambidurai is not a treating physician, and that in any event, her report does not supply any new or material information. (Def.'s Br. at 8-9.)

The Appeals Council specifically incorporated the evidence from Dr. Thambidurai into the administrative record. (Tr. at 6-9.) As such, in making a substantial evidence determination, this court must review the record as a whole, including the new evidence, to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).

Contrary to Claimant's argument, Dr. Thambidurai is not a treating physician. Dr. Thambidurai examined Claimant on one occasion in November 2003. (Tr. at 544-46.) Dr. Thambidurai also signed a Social History report authored by a therapist on October 10, 2003. (Tr. at 547-9.) As such, Dr. Thambidurai would not have the detailed, longitudinal view of the Claimant's condition which

is an important factor in deciding whether a treating physician's opinion should have controlling weight. See 20 C.F.R. § 404.1527(d)(2)(2003). Yet even a treating physician's opinion is afforded controlling weight only if two conditions are met: (1) it is supported by clinical and laboratory diagnostic techniques and (2) it is not inconsistent with other substantial evidence. Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2)(2003). In this case, Dr. Thambidurai's Assessment is not well-supported; in fact, she lists no medical or clinical findings that support her assessment despite requests for this information on the form. (Tr. at 557-8.) Next, Dr. Thambidurai's findings are not consistent with the notes of her examination. Upon examination, Dr. Thambidurai observed that Claimant was not in any acute physical or emotional distress. Claimant was cooperative and maintained appropriate conversation, and Dr. Thambidurai noted that her judgment was not impaired. (Tr. at 546.) Dr. Thambidurai prescribed only medications and counseling, and apparently did not schedule any follow-up appointments, for none were had.

Even if Dr. Thambidurai could be called a treating physician, these findings and level of treatment do not support the opinions rendered in the Medical Assessment form. Finally, Claimant's GAF score was 55, which indicates only a moderate level of impairment. The Assessment is further undercut by its inconsistency with this score.

14

This lack of support and degree of inconsistency in Dr. Thamburai's Assessment, together with the fact that Dr. Thambidurai only examined Claimant once, results in the Assessment being of little to no value.  It cannot be said that the Assessment might have changed the opinion of the ALJ or the outcome of the case, and so the court concludes that the Assessment is not material evidence.

Contrary to Claimant's remaining argument on this point, the ALJ was not bound to include the functional impairments listed on the Assessment in his hypothetical question to the vocational expert; the record does not support such impairments.  While questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

The court has considered the Appeals Council's remarks in declining review and finds them consistent with the above. The court continues in its position that the Appeals Council is not required to provide an in depth explanation for its decision that additional evidence offered by a claimant does not warrant a change in the ALJ's decision.  The court continues to find convincing the unpublished decision of the Fourth Circuit in Hollar v. Commissioner of Social Sec. Admin., 194 F.3d 1304, 1304, 1999 WL 753999, at *1 (4th Cir. Sept. 23, 1999), cert. denied, 530 U.S.

15

1219, reh'g denied, 530 U.S. 1291 (2000) (citing Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992)); see also Freeman v. Halter, No. 00-2471, 2001 WL 847978 (4th Cir. July 27, 2001); cf. Hawker v. Barnhart, 235 F. Supp.2d 445, 448-53 (D. Md. 2002); Harmon v. Apfel, 103 F. Supp.2d 869, 872-74 (D.S.C. 2000); Riley v. Apfel, 88 F. Supp.2d 572, 580-81 (W.D. Va. 2000); Alexander v. Apfel, 14 F. Supp.2d 839, 843-44 (W.D. Va. 1998).

The instant case resembles Hollar, supra, in which the Appeals Council stated simply that the newly submitted evidence "did not provide a basis for changing the Administrative Law Judge's decision." As noted by the Honorable Robert C. Chambers in a subsequent decision, this comment can only lead to one conclusion: the new evidence failed to meet the materiality requirement of 20 C.F.R. § 404.970(b). Dusty R. Toney v. Commissioner of Social Security, Dec. 19, 2003 slip op. at 9(unpublished). This same language appears in the instant case, and reinforces the court's conclusion.

The court acknowledges another unpublished decision by the Fourth Circuit in Thomas v. Commissioner of Social Security, No. 01-1544, 2001 WL 1602103 (4th Cir. Dec. 17, 2001), and finds that it does not direct a different result. In Thomas, the claimant submitted new evidence to the Appeals Council, which indicated that it did not provide a basis for changing the ALJ's decision. Thomas, 2001 WL 1602103, at *2. The district judge accepted the

recommendation of a magistrate judge that the court affirm the Commissioner's denial of benefits. The Fourth Circuit vacated the district court's decision and remanded the case to the Commissioner because on appeal, it became clear that the magistrate judge was not aware that the evidence submitted to the Appeals Council was from the claimant's treating physician. In addition, the Fourth Circuit could not discern whether the Appeals Council also failed to correctly understand that the new evidence came from the claimant's treating physician. <u>Thomas</u> was remanded not solely because of the lack of a more in depth explanation from the Appeals Council, but because of an ambiguity in the record that was not revealed until the case came before the Fourth Circuit. <u>Thomas</u>, 2001 WL 1602103, at *3-4.

In the instant case, there is no such ambiguity, and the court has determined that the newly submitted evidence did not come from a doctor who qualifies as a treating physician. The Appeals Council's decision stands under the cases cited above.

    2.   *Asthma and Obesity*

Claimant argues that the ALJ erred in failing to find her asthma and obesity to be severe impairments. (Pl.'s Br. at 9-10.) However, the evidence does not support such findings.

While Claimant alleges that she has asthma attacks lasting a few hours on the average of once a week (tr. at 587), the medical records only show two references to asthma: one in which Claimant

17

was diagnosed with "asthmatic bronchitis" and one complaint of shortness of breath in which Claimant told the physician she had asthma. (Tr. at 418, 555.) At the next visit, however, Claimant's lungs were clear. (Tr. at 554.) Claimant has not tendered any additional medical evidence to support her subjective complaints of asthma attacks. The record does not substantiate her complaints.

Likewise, Claimant has not established that her weight resulted in any functional limitations. At the administrative hearing, Claimant weighed 243 pounds, which was only three pounds more than she weighed at the date of her work-related injury. (Tr. at 404, 564.) No physician has diagnosed obesity nor determined that Claimant's weight limits her ability to work. Indeed, no physician has recommended weight loss or referred Claimant for weight management or counseling. While Claimant's BMI is such that she falls within the "severe" to "very severe" obesity categories, Claimant has still failed to demonstrate by medical (or even subjective) evidence a link between her weight and her capabilities.

Moreover, a state agency physician considered Claimant's weight and opined that she could still engage in light exertional activities with occasional postural limitations. (Tr. at 376-9.) The ALJ's assessment incorporated these and other restrictions. (Tr. at 22.) His finding was supported by substantial evidence.

After a careful consideration of the evidence of record, the

court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to provide copies of this written opinion and order to all counsel of record.

**ENTER** this 17th day of August, 2005.

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge